UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BILLY HAMMONDS,

                Petitioner,

v.

DEWAYNE BURTON,

                Respondent.

_____/

Case No. 1:20-cv-592

Hon. Ray Kent

## OPINION

Billy Hammonds filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons discussed below, the petition will be denied.

### I.      Background

### A.      Trial and conviction

A jury convicted Hammonds of third-degree criminal sexual conduct (CSC-III) (victim at least 13 and under 16 years of age), M.C.L. § 750.520d(1)(a).  *People v. Hammonds*, No. 336958, 2018 WL 6004694 at *1 (Mich. App. Nov. 15, 2018). The court sentenced Hammonds as a fourth-offense habitual offender, M.C.L. § 769.12, to 14 to 60 years imprisonment.  *Id*. at *2.

### B.      State court appeal

Hammonds filed a direct appeal which consisted of issues raised by his counsel and issues raised by Hammonds in a *pro se* Standard 4 brief.

Hammon's appellate counsel raised five claims on appeal:

I.     Was [Hammond] denied the effective assistance of counsel guaranteed by the federal and state constitutions (US CONST, AM VI; CONST 1963, ART 1, § 20) where trial counsel failed to call a witness who would have testified that whenever [Hammonds] slept at her house that they went to bed together at the same

1

time and slept together all night.   Further she would have testified that the complaining witness would flip flop to her on the issue as to whether she had had sex with [Hammonds] or not?

II.      Did the trial court abuse its discretion when it denied [Hammond's] Motion for a New Trial based on the prosecution's misconduct of shifting the burden of proof to [Hammond] during closing argument?

III.      Did the trial court abuse its discretion when it denied trial counsel's motion for a mistrial where the prosecution repeatedly violated the trial court's order that the complaining witness would not be referred to as a "victim," and [Hammonds'] ability to get a fair trial could not be cured by a limiting instruction?

IV.      Did the the [sic] Trial Court's interjection that the complaining witness' statements were not inconsistent statements but rather "misunderstandings" demonstrate the trial court's partiality toward the prosecution and improperly influence the jury by creating the appearance of advocacy and partiality against Mr. Hammonds?

V.      Must [Hammonds] be resentenced where the trial court abused its discretion when it scored 10 points rather than 0 points for Offense Variable 10 where the record did not support the allegation that [Hammonds] exploited [the minor, AM,] based on her age.

*Hammonds*, No. 336958 (Appellate Brief) (ECF No. 11-15, PageID.873-874).

Hammonds filed a Standard 4 Brief raising two issues:

I.      [Hammonds] must be arraigned in the circuit court in accordance to M.C.R. 6.113.  [He] was scheduled to be arraigned on 3/29/16 in the circuit court and was not arraigned or notife [sic] after.

II.      [Hammonds] was denied the effective assistance of counsel guaranteed by the federal and state constitutions (US CONST, AM, VI; CONST 1963 ART 1, § 20 where the trial counsel failed to inform [Hammonds] of the proper plea agreement the prosecution offered/proper guidelines.

*Id*. at PageID.922-923.   The Michigan Court of Appeals affirmed the conviction and denied

Hammonds *pro se* motion for reconsideration.  *See Hammonds*, 2018 WL 6004694 at *6; Order

(Jan. 22, 2019) (ECF No. 11-15, PageID.791).

Hammonds filed a *pro se* application for leave to appeal to the Michigan Supreme

Court.  Hammonds identified the following issues raised in the Michigan Court of Appeals:

I.      [Hammond] was denied the effective assistance of counsel guaranteed by the federal and state constitution (US CONST, AM VI; CONST 1963, ART 1, § 20) where trial counsel failed to call a witness who would have testified that they went to bed together at the same time and slept together all night.  Further she would have testified that the complaining witness would flip flop to her on the issue as to whether she had had sex with [Hammonds] or not.

II.      The trial court plainly erred when if failed to arraign [Hammonds] in Circuit Court once he was bound over.

III.      The Trial Court's interjection that the complaining witness statements were not inconsistent [sic] statements but rather "misunderstandings" demonstrated the trial court's partiality towards the prosecution and improperly influenced the jury by creating the apperence [sic] of advocacy and partiality against Mr. Hammonds.

IV.      The trial courts [sic] abused its discretion when it denied trials [sic] counsel's motion for a mistrial where the prosecution repeatedly violated the trial court's order that the complaining witness would not be referred to as a "victim"[.] [Hammonds'] ability to get a fair trial could not be cured by a limiting instruction.

V.      The trial court abused its discretion when it denied [Hammond's] Motion for a new trial based on the prosecution's misconduct of shifting the burden of proof to [Hammond] during closing argument.

Application for leave to appeal (ECF No. 11-16, PageID.1055-1077).

Hammonds raised one new issue before the Michigan Supreme Court:

I.      The trial courts [sic] abused its discretion when it denied trial counsel's motion for a directed verdict, when the prosecution failed to prove each element [of] Criminal Sexual Conduct 3rd degree MCL 750.520d1A.

*Id*. at PageID.1078-1080.  The Michigan Supreme Court denied the application for leave to appeal and Hammonds' motion for reconsideration.  *People v. Hammonds*, 504 Mich. 957 (Sept. 10, 2019); *People v. Hammonds*, 505 Mich. 979 (Feb. 4, 2020).

## II.      Habeas claims

This matter is now before the Court on Hammonds' petition seeking federal habeas review pursuant to 28 U.S.C. § 2254.  *See* Petition (ECF No. 1).  Hammonds has raised the following issues:

I.      Petitioner was denied the effective assistance of counsel guaranteed by the federal and state constitutions (US CONST, AM VI; CONST 1963, ART 1, § 20) where trial counsel failed to call a witness who would have testified that whenever petitioner slept at her house that they went to bed together at the same time and slept together all night. Further she would have testified that the complaining witness would flip flop to her on the issue as to whether she had had sex with petitioner or not.

II.     The trial court abused its discretion when it denied petitioner's motion for a new trial based on the prosecution's misconduct of shifting the burden of proof to defendant during closing argument.

III.    The trial court abused its discretion when it denied trial counsel's motion for a mistrial where the prosecution repeatedly violated the trial court's order that the complaining witness would not be referred to as a victim and petitioner's ability to get a fair trial could not be cured by a limiting instruction.

IV.     The trial court's interjection that the complaining witness' statements were not inconsistent statements but rather "misunderstandings" demonstrated the trial court's partiality toward the prosecution and improperly influenced the jury by creating the appearance of advocacy and partiality against Mr. Hammonds.

V.      Petitioner must be resentenced where the trial court abused its discretion when it scored 10 points rather than 0 points for offense variable 10 where the record did not support the allegation that petitioner exploited [AM] based on her age.

VI.     The petitioner must be arraigned in the Circuit Court in accordance with Mich. Ct. Rule 6.113, petitioner was scheduled to be arraigned on 3/29/2016 in the Circuit Court and was never arraigned at that or any other time thereafter, thereby denying him of his due process right to the compulsory process of an arraignment.

Petition at PageID.5-11.

## III.    Standard of review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  In this regard, 28 U.S.C. § 2254 provides that,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Under this statute, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381-82 (2000); *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially

indistinguishable facts.  *Bell*, 535 U.S. at 694.  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity.  *Stermer v. Warren*, 959 F.3d 704, 721 (2020).  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  In addressing a petitioner's habeas claims, "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *Sumner v. Mata*, 449 U.S. 539, 546-547 (1981).

Finally, § 2254(d) limits the facts a court may consider on habeas review.  The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  "[I]f the petitioner's claim was never adjudicated on the merits by a state court, 28 U.S.C. § 2254(d), AEDPA deference no longer applies."  *Stermer*, 959 F.3d at 721.  "Instead, the petitioner's claim is reviewed *de novo* as it would be on direct appeal."  *Id*.

6

IV.     **Discussion**

A.     **Ineffective assistance of trial counsel (Issue I)**

Hammonds contends that he was denied the effective assistance of counsel for two reasons.  First, trial counsel failed to call a witness who would have testified that they went to bed together at the same time and slept together all night, and that the victim would "flip flop to her" as to whether she had sex with Hammonds.  Second, trial counsel did not advise Hammonds of the possible penalty associated with a plea offer.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction.  First, the defendant must show that counsel's performance was deficient.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  "In this regard, the court will 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689).

Second, the defendant must show that counsel's deficient performance prejudiced the defense, *i.e.*, "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687.  "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693.  "Even if a [petitioner] shows that particular errors of counsel were unreasonable, therefore, the [petitioner] must show they actually had an adverse effect on the defense." *Id*.  The appropriate test is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694.  In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Id.* at 689-690.  "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential', and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105 (internal citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 1.      Failure to call a witness

The Michigan Court of Appeals addressed this claim as follows:

*Ineffective Assistance of Counsel*. Defendant claims that his defense counsel was constitutionally deficient.  A preserved claim of ineffective assistance of counsel is "a mixed question of law and fact." *People v. Hunter*, 493 Mich. 1015; 829 N.W.2d 871 (2013).  We review questions of law de novo and "the trial court's factual findings for clear error. Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v. Armstrong*, 490 Mich. 281, 289; 806 N.W.2d 676 (2011) (cleaned up).

An appellate court is required to reverse a defendant's conviction when defense counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687; 104 S.Ct.2052; 80 L.Ed. 2d 674 (1984).  A defendant requesting reversal of an otherwise valid conviction bears the burden of proving "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the

outcome of the proceedings would have been different." *People v. Sabin (On Second Remand)*, 242 Mich. App. 656, 659; 620 N.W.2d 19 (2000).

To prove the first prong, "[t]he defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *People v. Stanaway*, 446 Mich. 643, 687; 521 N.W.2d 557 (1994). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v. Rockey*, 237 Mich. App. 74, 76; 601 N.W.2d 887 (1999). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v. Russell*, 297 Mich. App. 707, 716; 825 N.W.2d 623 (2012). Regarding the second prong, a defendant is prejudiced if there is a reasonable probability that, "but for defense counsel's errors, the result of the proceeding would have been different." *People v. Heft*, 299 Mich. App. 69, 81; 829 N.W.2d 266 (2012).

Defendant first argues that he was denied his right to effective assistance of counsel when defense counsel failed to call TL as a witness at trial. Defendant asserts that TL's testimony would have corroborated his version of the facts and cast significant doubt on the veracity of AM's allegations. The record shows, however, the defendant [sic] counsel attempted to contact and subpoena TL several times for trial. After defense counsel, county officials, and the police tried and failed to reach TL, it was reasonable for defense counsel to believe that TL would not be available to provide testimony at trial. Thus, defendant has failed to show that his defense counsel's performance was deficient.

*Hammonds*, 2018 WL 6004694 at *4-5.

Here, the Michigan Court of Appeals applied the appropriate standard in determining Hammonds' claim of ineffective assistance of trial counsel. As that court observed, the proposed witness, TL, could not be located by defense counsel, county officials, and the police. Counsel is not ineffective for failing to call a witness who cannot be found. *See Coe v. Bell*, 161 F.3d 320, 342 (6th Cir. 1998) (counsel was not ineffective when he failed to interview numerous alibi witnesses, where "most of these witnesses were unavailable or would not cooperate with counsel at the time of pre-trial preparation"). Accordingly, this habeas claim is denied.

> **2.    Failure to inform Hammonds of the possible penalty that would have followed from accepting an offered guilty plea**

Next, Hammonds contends that defense counsel informed him that his minimum sentencing range under a plea offer would have been between 78 and 162 months of imprisonment. Hammonds contends that the correct guidelines range would have been 51 to 106 months and that if counsel had advised him of the lesser range he would have accepted the offered guilty plea.   The Michigan Court of Appeals addressed this claim as follows:

> Defendant, in his Standard 4 brief, also argues that defense counsel was ineffective for failing to inform him of the possible penalty that would have followed from accepting an offered guilty plea.  Specifically, defendant alleges that he was offered a plea for one count of CSC-III as a second-offense habitual offender, and that defense counsel informed him that his minimum sentencing range under that plea would have been between 78 and 162 months of imprisonment.  Defendant contends that the correct range would have been 51 to 106 months, and that if defense counsel had advised him accordingly, he would have accepted the offered guilty plea.

> Assuming arguendo that defense counsel did advise defendant of a 78-to-162-month guidelines range, were [sic] are unable to conclude that such advice was unreasonable. Indeed, the record shows that, given the resolution of certain factual questions at issue, defendant's guidelines range could have been 78 to 162 months. Defendant was assessed 47 points for prior record variables and 10 points for offense variables.  We have already concluded that the trial court properly scored OV 10 at 10 points.  Moreover, an argument could be made for an assessment of an additional 60 OV points.  OV 4 could have been scored at 10 points for the psychological injury AM suffered after being bullied by her classmates for the encounter, MCL 777.34(2); OV 11 could have been scored at 25 points given evidence that defendant penetrated AM during the encounter, MCL 777.41(1)(b); and OV 13 could have been scored at 25 points given that evidence existed that defendant was charged with committing three other crimes within five years of committing the instant offense, MCL 777.43(1)(c).  Had the trial court not resolved these determinations in defendant's favor, defendant's guidelines range would have been 78-to-162 months.  *See* MCL 777.63; MCL 777.21(3)(a). Thus, defendant's second ineffective-assistance claim is also without merit.

*Hammonds*, 2018 WL 6004694 at *5.

"In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence[.]"  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id*. at 59.

Here, Hammonds' claim failed at the first *Strickland* requirement.  As the Michigan Court of Appeal's explained, assuming that Hammonds' counsel advised that the plea offer included a guidelines range of 78 to 161 months imprisonment, such advice was not unreasonable. In this regard,

A "mere inaccurate prediction, standing alone, [does] not constitute ineffective assistance." *United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir.1990) (internal quotation marks omitted).  *See generally, Barker v. United States*, 7 F.3d 629, 633 (7th Cir.1993) ("[m]isinformation from a defendant's attorney, such as an incorrect estimate of the offense severity rating, standing alone, does not constitute ineffective assistance of counsel[").

*Sivley v. Romanowski*, No. 1:06-cv-711, 2010 WL 565120 at *11 (W.D. Mich. Feb. 10, 2010).

Accordingly, this habeas claim is denied.

### B.    Prosecutorial misconduct

Petitioner raised two claims of prosecutorial misconduct.

### 1.    Denial of motion for a new trial based on the prosecution's misconduct during closing argument (Issue II)

The Michigan Court of Appeals addressed the claims as follows:

*Prosecutorial Misconduct*. On appeal, defendant first raises two claims of prosecutorial misconduct.  Prosecutorial misconduct issues are decided on a case-by-case basis. *People v. Grayer*, 252 Mich. App. 349, 357; 651 N.W.2d 818 (2002). "We review the prosecutor's statements in context to determine whether the defendant was denied a fair and impartial trial." *Id*.  The prosecutor's statements "are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *People v. Dobek*, 274 Mich. App. 58, 64; 732 N.W.2d 546 (2007).  Generally, prosecutors are given great latitude regarding their arguments and are "free to argue the evidence and reasonable

inferences from the evidence as they relate to their theory of the case." *People v. Seals*, 285 Mich. App. 1, 22; 776 N.W.2d 314 (2009).

First, defendant contends that the prosecutor improperly shifted the burden of proof to defendant during her rebuttal closing argument. Defense counsel argued in her closing argument that the prosecutor's failure to present TL or defendant's cousin as a witness meant that they would testify in defendant's favor. The prosecutor responded in her rebuttal that, if TL or the cousin had testimony that could help defendant's case, he could have called them as witnesses.

Ordinarily, "a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof." *People v. Fyda*, 288 Mich. App. 446, 464; 793 N.W.2d 712 (2010). A prosecutor's comment on a defendant's failure to call a witness, however, does not shift the burden of proof unless the prosecutor's comment implicates the defendant's right not to testify. *People v. Fields*, 450 Mich. 94, 112; 538 N.W.2d 356 (1995). Rather, such comments merely point out weaknesses in the defendant's case. *Id.* The *Fields* Court explained that

> The defendant's decisions about evidence other than his own testimony do not implicate the privilege [against self-incrimination], and a comment on the defendant's failure to call a witness does not tax the exercise of the privilege. It simply asks the jury to assess the value of the existing evidence in light of the countermeasures that were (or were not) taken. [*Id.* at 114-115 (cleaned up).]

In this case, the prosecutor's comment regarding defendant's failure to call a witness did not impinge defendant's right not to testify at trial. No statements were offered by either party that brought defendant's right not to testify before the jury's attention, and, regardless, defendant ultimately did testify in his own defense. The challenged statement was not an improper attempt to shift the burden of proof; rather, it was a proper explanation of the parties' rights to present witnesses in response to defense counsel's closing argument. *People v. Watson*, 245 Mich. App. 572, 593; 629 N.W.2d 411 (2001). Moreover, the trial court properly instructed the jury that the prosecutor bore the burden of proof, meaning that defendant cannot show prejudice from the challenged comment. *People v. Unger*, 278 Mich. App. 210, 237; 749 N.W.2d 272 (2008). Thus, defendant's first claim of prosecutorial misconduct is without merit.

*Hammonds*, 2018 WL 6004694 at *2.

In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v.*

*Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young,* 470 U.S. 1, 11-12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.  *See id*. at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003) ).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.' " *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. 637, 645).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (internal quotation omitted).

Here, defense counsel faulted the government for failing to call the missing witnesses, while on rebuttal the prosecutor pointed out that the defense failed to call the missing

witnesses. [1]   The gist of Hammonds' claim is that the prosecution improperly shifted the burden of proof by pointing that Hammonds could have called missing witnesses to help his defense. The Sixth Circuit addressed this issue in *United States v. Farrow*, 574 Fed. Appx. 723 (6th Cir. 2014):

> Farrow argues that by faulting the defense for not calling Lockhart as a witness, the prosecution shifted the burden, making it appear that Farrow was obligated to call witnesses to prove his innocence.  However, when the defense has questioned why the prosecution has not called a particular witness, the prosecution may respond that the defense also could have called that witness to testify.  *United States v. Reynolds*, 534 Fed. Appx. 347, 368 (6th Cir.2013) (citing *United States v. Gonzalez*, 512 F.3d 285, 292 (6th Cir. 2008)); *United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir.1998) ("[I]t is not improper for a prosecutor to note that the defendant has the same subpoena powers as the government, particularly when done in response to a defendant's argument about the prosecutor's failure to call a specific witness." (internal quotation marks omitted)).The prosecution's statements in closing rebuttal that Farrow had the same subpoena powers to bring Lockhart to testify were in response to defense counsel's statements in closing criticizing the prosecution for not putting Lockhart on the stand.  The statements did not shift the burden and do not otherwise constitute plain error.

*Farrow*, 574 Fed. Appx. at 728.

Furthermore, the jury was aware that Hammonds did not have the burden of proof. The trial court gave the jury an instruction on the prosecutor's burden to prove the crime beyond a reasonable doubt:

---

[1] During closing argument defense counsel stated:

> Why didn't the prosecutor bring in Trish, Kalden, Greg or Rickey?  Everyone that was supposedly there that night.  Where are they? They would of [sic], in their opinion, corroborated [AM].

Trans. (ECF No. 11-10, PageID.624).  On rebuttal the prosecutor stated:

> All of this time that [defense counsel is] stating that I did not provide you with the evidence you need to make a decision in this case, the very first thing the jury instructions states [sic] that if you belief [AM] than [sic] I don't need to present you with any other evidence.

> But I presented you with a lot more evidence.  I presented [defense counsel] with a lot more evidence.  And she could of [sic] brought any of that evidence to trial.  She says well what would Trisha have said? She could of [sic] called Trisha.  She says what would Ricky have said? She could of [sic] called Rickey.  I'm not the only one with the ability to call witnesses here.  If they would of [sic] said something helpful to her case she could have called them. . ."

*Id*. at PageID.632-633.

Every crime is made up of parts called elements.  The prosecutor must prove each element of the crime beyond a reasonable doubt.  The defendant is not required to prove his innocence or do anything.  If you find the prosecutor has not proven every element beyond a reasonable doubt then you must find the defendant not guilty.

Trans. (ECF No. 11-11, PageID.682).  "A jury is presumed to follow its instructions."  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Accordingly, this habeas claim is denied.

### 2.     Trial court's denial of a motion for a mistrial where the prosecution repeatedly referred to the complaining witness as a victim (Issue III)

The Michigan Court of Appeals addressed the second claim of prosecutorial misconduct as follows:

Defendant also argues that the prosecutor engaged in misconduct when she and her witnesses repeatedly referred to AM as "the victim" despite an order from the trial court to refer to her as "the complaining witness" instead.  We disagree.

In this case, the trial court made a pretrial ruling that the parties and their witnesses were to refrain from using the word "victim" as opposed to "complaining witness."  Over the course of trial, the prosecutor used the word "victim" four times when specifically referencing AM and three more times without specifically referencing AM.  Moreover, two of the prosecutor's witnesses—both police officers—referred to AM as "the victim" in their testimonies.

Having reviewed the record, we are unable to conclude that the use of the term "victim" denied defendant a fair trial.  Although the prosecutor did refer to AM as the victim on occasion, she usually quickly corrected herself to use a different moniker.  There is no indication that the prosecutor knew that her witnesses would refer to AM as the victim or that she intentionally elicited such a response and, although the term victim was used at other points at trial, these references were not directed towards AM.  Moreover, the trial court specifically instructed the jury that AM was to be referred to as the "complaining witness" rather than the "victim."  This instruction cured any prejudice to defendant, rendering his second claim of prosecutorial misconduct without merit.  *People v. Mahone*, 294 Mich. App. 208, 212; 816 N.W.2d 436 (2011).

Hammonds, 2018 WL 6004694 at *3.

Here, immediately before the jury began deliberations, the trial judge gave them a limiting instruction regarding references to AM as a "victim" during the trial:

And just for the clarification of the limiting instruction I'll just do it orally on the record ladies and gentlemen.  The limiting instruction that [defense counsel] is referring to is at several times throughout the trial [AM has] been referred to as the victim.  She should officially be referred to as the complaining witness.  That's the limiting instruction.  So please when you're considering her, she is at this point a complaining witness.  I think that satisfies the limiting instruction.

Trans. (ECF No. 11-11, PageID.728). This limiting instruction clarified AM's status during the trial, advised the jury to consider her as a complaining witness rather than a victim, and cured any error which may have occurred by the prosecutor referring to her as a victim.  Accordingly, this habeas claim is denied.

### C.    Trial court was biased (Issue IV)

Hammonds contends that the trial judge showed partiality toward the prosecution and improperly influenced the jury by creating the appearance of partiality against him.   The Michigan Court of Appeals addressed Hammonds' claim as follows:

*Judicial Partiality*.   Defendant next argues that reversal is warranted because the trial court demonstrated that it was biased in favor of the prosecutor when it held that AM's responses to defense counsel's questions were "misunderstandings" rather than inconsistencies.  Criminal defendants have a right to a fair and impartial jury trial. *People v. Stevens*, 498 Mich. 162, 170; 869 N.W.2d 233 (2015).  "A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality." *Id*. at 170-171.  "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171.

During the first day of trial, defense counsel began questioning AM about her prior statements, attempting to emphasize inconsistencies. While cross-examining AM, the following exchange took place:

Q. Do you recall telling Detective Harp that it was [TL] and [defendant] that were dating at the time?

A. They were sleeping together, yea.

Q. Do you recall testifying back in March that it was [another person] and [TL] that were dating at the time?

16

A. Yea.

Q. And now today it's they're both dating her?

A. No, I don't think that either one of them are dating her now.  But back in the summer they were both bouncing around with her, yea.

Q. So that would [be] three inconsistent statements that you've given us.

The prosecutor objected, arguing that defense counsel's statement was improper and that AM's last statement did not constitute an inconsistency.  The trial court sustained the objection, stating,

I don't think it's inconsistency but it might just be some misunderstanding.  I don't think it's intentional.  I think it's just mistaken so if you want to rephrase the question.  I know what you're trying to get at . . . .  But for that point I'll sustain the objection.

Defense counsel then asked whether AM's previous indication that TL and defendant were dating was consistent with a previous indication that TL and another person were dating.  AM stated that she did not recall testifying that TL and the other person were "dating."  Rather, she remembered stating that they were sleeping together.

Having reviewed the challenged ruling, we are unable to conclude that the trial court pierced the veil of judicial impartiality.  The trial court was not ruling definitively that the witness did not testify inconsistently.  Rather, taken in context, the trial court was merely pointing out that defense counsel and the minor witness appeared to be misunderstanding each other, specifically with regard to the use of the word "today."  The trial court did not preclude the line of questioning altogether, but rather encouraged defense counsel to continue exploring the issue.  Defense counsel did so, specifically targeting the alleged inconsistency between AM's trial testimony and previous statements.  Thus, it is clear that the trial court was merely attempting to ensure accuracy in the proceedings and did not abandon its veil of impartiality.  Defendant's claim is without merit.

*Hammonds*, 2018 WL 6004694 at *3-4.

"A fair trial in a fair tribunal is a basic requirement of due process."  *In re Murchison*, 349 U.S. 133, 136 (1955).  "Fairness of course requires an absence of actual bias in the trial of cases."  *Id*.  Here, Hammonds contends that he did not receive a fair trial because the

judge was biased in favor of the prosecution and against him. The basis for Hammonds' claim is that the trial judge sustained an objection by the prosecution with respect to a somewhat confusing cross-examination of the victim by defense counsel. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Here, the state appellate court correctly pointed out that the trial judge "was merely attempting to ensure accuracy in the proceedings" with respect to defense counsel's cross-examination of a minor. Accordingly, this habeas claim is denied.

### D. State court sentencing error (Issue V)

Hammonds contends that the trial court erred in calculating his sentencing guidelines because 10 points were improperly assessed under offense variable (OV) 10. The Michigan Court of Appeals concluded that, "Ten points are properly scored under OV 10 where '[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status.' MCL 777.40(1)(b)." *Hammonds*, 2018 WL 6004694 at *4.

This claim does not present an issue cognizable under § 2254. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Federal habeas corpus relief does not lie for errors of state law, which includes the state's computation of a petitioner's prison term. *Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003), citing *Estelle*, 502 U.S. at 68. *See Austin v. Jackson,* 213 F.3d 298, 300 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). "As long as the sentence remains within the statutory limits, trial courts have historically been given wide

discretion in determining 'the type and extent of punishment for convicted defendants.'" *Id.* at 301, *quoting Williams v. New York*, 337 U.S. 241, 245 (1949).

As discussed, the trial court sentenced Hammonds to a term of 14 to 60 years imprisonment. There is no evidence that petitioner's sentence exceeded the statutory limits. The jury convicted petitioner of CSC-III which "is a felony punishable by imprisonment for not more than 15 years." *See* M.C.L. § 750.520d(2). The Court enhanced petitioner's sentence because he was a fourth habitual offender pursuant to M.C.L. § 769.12 which provides in pertinent part that, "If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term of 5 years or more or for life, the court . . . may sentence the person to imprisonment for life or for a lesser term." M.C.L. § 769.12(1)(b). Accordingly, this habeas claim is denied.

### E.      Request for an arraignment (Issue VI)

Finally, Hammonds contends that he was scheduled to be arraigned on March 29, 2016, in the Circuit Court, that he was never arraigned at that or any other time thereafter, and that he was denied his due process right to the compulsory process of an arraignment. Hammonds' contention is without merit. The Michigan Court of Appeals addressed this issue as follows:

> Finally, defendant, in his Standard 4 brief, argues that the trial court failed to arraign him on the charge ultimately levied against him. The register of actions in this case indicates that defendant was arraigned on March 29, 2016, at which time he stood mute to the charge against him. The record makes clear that defendant had notice of the charge and defendant's claim that the trial court lacked jurisdiction over him because of the alleged failure to arraign is without merit.

*Hammonds*, 2018 WL 6004694 at \*5. The appellate court's factual finding is presumed to be correct. *See* 28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546-547. Petitioner has failed to rebut this presumption. In this regard, the record includes Hammonds' "Waiver of arraignment and Election to stand mute or enter not guilty plea" in the 50th Circuit Court (Chippewa County) (March 29, 2016) (ECF No. 11-5, PageID.285). The waiver reflects that Hammonds "stands mute

to the charge(s) and requests the court to enter a plea of not guilty" and that the Judge entered a plea of not guilty on behalf of Hammonds. *Id*. Accordingly, this habeas claim is denied.

## V.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if the petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *See Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Hammonds' claims under the *Slack* standard. To warrant a grant of the certificate under *Slack*, 529 U.S. at 484, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id*.

Here, the Court finds that reasonable jurists could not conclude that this Court's dismissal of Hammonds' claims was debatable or wrong. Therefore, the Court will deny Hammonds a certificate of appealability. Finally, although Hammonds has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing

of the denial of a constitutional right, the Court does not conclude that any issue he might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## VI.    Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:  September 28, 2023                              /s/ Ray Kent
                                                       RAY KENT
                                                       United States Magistrate Judge